FILED
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS
May 17, 2018
OFFICE OF THE CLERK

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

**JAMES MICHAEL WHITE**            **PLAINTIFF**

NO. 18-6047

**THE RETIREMENT PLAN OF INTERNATIONAL
PAPER COMPANY; DIRECTOR, GLOBAL COMPENSATION
AND BENEFITS, INTERNATIONAL PAPER COMPANY
PLAN ADMINISTRATOR; STATE STREET GLOBAL
ADVISORS, PLAN TRUSTEE AND HEWITT AON, ADMINISTRATOR**    **DEFENDANTS**

## COMPLAINT

Comes now James Michael White ("White"), by and through his attorneys, Christopher O, Parker and Jeffrey H. Dixon of Eichenbaum Liles P.A. and in support of his Complaint states:

1. White is a resident of Clark County, Arkansas and a former employee of International Paper Company ("IP") working at various IP plants from October 6, 1979 until September 30, 2005. There was, during this time, two short breaks in White's employment status with IP from June 30, 1989 until May 1, 1990 and again from April 1, 2002 until September 1, 2002 when White left IP to work for different employers.

2. The Retirement Plan of International Paper Company ("the IP Plan") is an employee benefit plan for employees of IP which is governed by and subject to the Employer Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §1001 et. seq. CT Corporation is the designated agent for service of process of the IP Plan. The Director, Global Compensation and Benefits International Paper Company, 6400 Poplar Avenue, Memphis, TN 38197 is the Plan Administrator. State Street Global Advisors, 225 Franklin Street, Boston, Massachusetts, 02101, is the Plan Trustee. Hewitt Aon is the Claims Administrator for the Plan.

3. This is an action brought by White, as a participant in the IP Plan to recover

benefits due to him, and otherwise enforce his rights under the IP Plan pursuant to 29 U.S.C. §1132(a)(1)(B). It is also a claim for breach of fiduciary duty and the equitable relief for an accounting of White's participation and benefits due him under the IP Plan pursuant to 29 U.S.C. §1132(a)(3).

4. The Court has jurisdiction of the claim pursuant to 29 U.S.C. §1132 (e) and (f) and 28 U.S.C. § 1331.

5. Venue lies in the Western District of Arkansas because some of the events or omissions giving rise to White's claim occurred with the District and because White resides in the District.

6. On or about October 6, 1979, White began his employment with IP as an electrician in the Gurdon [Arkansas] Wood Products Plant. White worked at the Gurdon Plant until March 1, 1987. White was paid as an hourly employee during this time period.

7. During White's tenure at the Gurdon Plant, IP sponsored the International Paper Company Retirement Thrift Plan ("RTP") designed as a retirement plan and a thrift plan to provide an opportunity for designated hourly employees of IP to provide money for their retirement through a combination of their own contributions and IP contributions. On January 1, 1984 hourly employees at the Gurdon Plant, including White, became eligible to participate in the RTP. Attached as Exhibit "A" to the Complaint is a copy of White's executed RTP Beneficiary form (form RTP-2) executed on or about January 13, 1984, evidencing White's participation in the RTP shortly after it became available for hourly employees at the Gurdon plant.

8. On or about March 1, 1987, White was transferred by IP from Gurdon to the Springhill [Louisiana] Wood Products Plant. His initial job after the transfer was an Electronic

Technologist (with supervisory responsibilities) and then as Manager of Mechanical, Electrical. At the time of the transfer to Springhill with White's new job and his new responsibilities, White became a salaried employee. As a salaried employee, White was no longer eligible to participate in the RTP, but did participate in the IP Plan as salaried employee for all of the rest of his employment with IP.

9. The Plan disputes that White was a salaried employee from March 1, 1987 until June 1989 at Springhill, or at least disputes that White has been able to present to the Plan specific evidence to support that fact. The IP Plan incorrectly assigned the burden of producing such evidence on White.

10. On or about June 30, 1989, White left IP for other employment. At this time he withdrew funds that were available to him from both the RTP and Salaried Plans in which he had participated. A copy of two 1099's, one identified as the "RTP Plan" and one identified as "SIP" are attached hereto as Exhibits "B" and "C".

11. On or about May 1, 1990, White was rehired by IP as Manager of Plywood at the Gurdon [Arkansas] Wood Products Plant, an admittedly salaried position. Further, when White was rehired the IP Plan that White enrolled in was admittedly the retirement Plan for salaried employees. A copy of his enrollment document from that time, an SIP-1 form, is attached hereto as Exhibit "D".

12. Thereafter on or about January 1, 1995, White was promoted and transferred to the Jefferson OSB Plant in Texas where he held a couple of different management positions as an admittedly salaried employee. White left IP's employment on or about April 1, 2002, when IP sold the plant at which he was working to another company. White stayed with the buying company for a time.

13. On September 1, 2002, White was rehired by IP to be operations manager and then plant manager at Springhill (again a salaried position) until he left IP employment permanently on September 30, 2005. At that time the division of IP in which the Springhill plant had been assigned was in the process of being sold.

14. Although White' participation in the various IP plans was vested at the time he terminated in 2005 White had not reached retirement age and was not entitled to a distribution in a lump sum or otherwise of his remaining and accumulated interests in the Plans under the then existing terms and conditions.

15. In early 2016 White received notification that as a vested member of the IP Pension Plan he would now be eligible to receive an early retirement benefit in either a lump sum payment, or a monthly annuity payment, starting June 2016. A copy of the notification received by White is attached as Exhibit "E".

16. Thereafter on or about March 1, 2016, White received from IP a pension calculation statement showing both lump sum payment options arising from White's participation in both the ("IP Salaried Plan") and the RTP Plan. Those calculations by the IP Plan reflected 9.75 years as an hourly employee participating in the RTP Plan and 14.8333 years as a participant in the Salaried Plan. A copy of the Calculation Statement is attached as Exhibit "F".

17. In fact White had been an hourly employee only 7.41 years and had been a salaried employee for 17.34 years.

18. The discrepancy between the calculation reflected in Exhibit F, and the actual facts of White's employment history is the 2.37 years from March 1, 1987, until June 30, 1989 after White was transferred to Springhill from Gurdon and White first became in fact a salaried

employee. The IP Plan took the position in the calculation evidenced by Exhibit "F" that this time in Springhill was still as an hourly employee.

19. After trying to get the incorrect calculations corrected through the AON Hewitt Service Center, the Claims Administrator for the IP Plan, White, on or about May 12, 2016, formally appealed this incorrect determination as called for in the Plan documents to the Vice President, Global Compensation & Benefits for International Paper Company in Memphis. A copy of that appeal letter and letters from fellow employees at Springhill who also knew about White's then salaried status while in Springhill (from 1987-1989) are attached hereto as Exhibit "G".

20. On or about May 30, 2016, White elected to receive a lump sum payment. A copy of the paperwork evidencing that election is attached as Exhibit "H". Consistent with IP's calculations (which were being appealed) he received $225,885.99 for what IP considered his 14.8333 years of participation in the Salaried Plan and $10,360.72 for what IP calculated was his 9.75 years participation is the hourly Retirement Thrift Plan. These numbers evidence the large dollar discrepancy that caused financial loss to White from IP's mischaracterizing his 2.37 years of employment in 1987-1989 at Springhill as hourly employment. A copy of White's 2016 1099 reflecting a total lump sum payment to him of $236.246.71 is attached hereto as Exhibit "I".

21. On or about July 26, 2016, citing a "need for additional research", the IP Plan extended its review of White's appeal for additional 60 days. A copy of that extension correspondence is attached as Exhibit "J".

22. On or about August 17, 2016, the Office of Plan Administrator denied White's appeal. That denial includes the statement: "a diligent search of company records has located no documentation that indicated you were a salaried employee prior to 1990. Additionally, your

submitted letters are not sufficient to establish that you were a salaried employee from March 1987 through June 15, 1989." The denial of the appeal is attached as Exhibit "K".

23. On September 3, White wrote the Plan requesting a copy of the documents relied upon by IP to deny his appeal. A copy of that letter is attached as Exhibit "L". Those requested documents, including both Plan Documents, and what was purported to be White's employee file were provided to White in October. Those documents provided to White did not indicate one way or the other whether White's 1987-1989 employment in Springhill was hourly or salaried. What purported to be White's complete employment file was incomplete and in fact appeared to include some records of a different Michael White. Frustrated, and based upon IP's inability to produce records one way or the other (yet ignoring the evidence of fellow employees who knew) White wrote a letter to Mark Sutton, IP CEO and arranged to have it delivered to Mr. Sutton in early January 2017. A copy of that letter is attached as Exhibit "M".

24. White's letter to Sutton generated additional communication from IP personnel to White. In one such communication, Thomas Plath, and IP employee had reached out to White. White, in reply discussed in some detail the specific lack of critical documentation in the personnel file which had been sent to White. White wrote in part:

> I have a copy of my employee file that was used to make the decision and it is very incomplete. There is nothing in the file that proves I was an hourly or salary from 3/1/87 through 6/30/89. There is no clear information that shows that I transferred from Gurdon Wood Product in Gurdon, AR to Springhill Wood Products in Springhill, LA in March of 1987. From the denial, I don't even know if Hewitt acknowledges that I transferred or if they have just interpreted that I stayed in Gurdon as an hourly employee. I think there must be another file somewhere that has more information. While I was in Springhill, I was promoted to Manager Electrical and Mechanical. The promotion moved from a PL9 to a PL11 so you would think that paperwork has to exist somewhere.

A copy of White's email to Mr. Plath is attached as Exhibit "M".

25. The correspondence to Mr. Sutton was apparently forwarded to and answered by Mr. Mark Azzarello, the Vice President of Global Compensation and Benefits in the office of the IP Plan Administrator. That response details efforts made by that office made to supplement the incomplete personnel file but to apparently no avail. Mr. Azzarello did claim that White had received a significant "overpayment" (based on the apparent assumption of only RTP participation) in the funds withdrawn by White in 1989 (an alleged $8,822.02 overpayment out of a total payment of $13,083.39). The letter from Azzarello seems to confirm that the lack of documentation in White's personnel file both existed and could not now be supplemented. A copy of Azzarello's letter of January 26, 2017 is attached as Exhibit "N".

26. Finally White asked an Arkadelphia attorney, Ms. Gina White to write IP in a last ditch effort to get the matter resolved. Michael T. Moore an in house benefits attorney wrote Ms. White back and clearly stated that:

> The Plan is still without adequate records to support a finding that Mr. White was a salaried employee prior to 1990. In the absence of concrete evidence to this effort, the Plan cannot arbitrarily pay benefits as if Mr. White was a salaried employee.

A copy of the letter is attached as Exhibit "O".

27. The Plan had a fiduciary duty to maintain adequate records to definitely determine whether White was paid hourly or on salary.

28. The failure of the Plan or IP is maintain such definitive records as to White's status at Springhill, is a breach of that fiduciary duty.

29. In the absence of such records, and in the face of inference raised by the letters submitted by fellow employees and the evidence of an alleged "overpayment" in 1989 over what White should have been paid had he actually been an hourly employee for that 2.37 year period

arising from payment through White under two 1099s (Ex. "E" and "F"), the failure to credit White's service in Springhill as salaried service is an additional breach of fiduciary duty.

WHEREFORE, premises considered, White prays that the Court order that the IP Plan credit White's employment from March 1, 1987, until June 15, 1989, as salaried employment that the IP Plan render a true accounting of the additional lump sum payment due to White, that he be paid that sum plus prejudgment interest from June 1, 2016, until paid and that White be awarded his costs including attorney fees for having to undertake this action.

RESPECTFULLY SUBMITTED,

EICHENBAUM LILES P.A.
124 West Capitol Avenue, Suite 1900
Little Rock, Arkansas 72201
(501) 376-4531
(501) 376-8433 facsimile

By: _____
Christopher O. Parker, ABN 75099